IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRENDA LEE DELOE,                )
                                 )
           Plaintiff,            )
                                 )    Civil Action No. 07-157 Erie
                                 )
           v.                    )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
           Defendant.            )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Plaintiff, Brenda Lee Deloe, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq*. Deloe protectively filed applications for DIB and SSI on October 22, 2003, alleging disability since October 22, 2002 due to carpel tunnel syndrome, emphysema, reflux disease and depression (Administrative Record, hereinafter "AR", 75-77; 89; 100-101; 295-298). Her applications were denied and she requested a hearing before an administrative law judge ("ALJ") (AR 51-55; 58-59; 301-305). A hearing was held before an administrative law judge ("ALJ") on November 7, 2006 (AR 311-338). Following this hearing, the ALJ found that Deloe was not entitled to a period of disability, DIB or SSI under the Act (AR 13-20). Her request for review by the Appeals Council was denied (AR 6-9), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny both motions and the matter will be remanded to the Commissioner for further proceedings.

### I. BACKGROUND

Deloe was born on March 1, 1962 and was forty-four years old on the date of the ALJ's decision (AR 75). She has an 8th grade education, did not attend special education classes and

has past relevant work experience as a laborer and telemarketer (AR 101; 105). She is married and lives with her husband (AR 100).

Deloe reported on a Daily Activities Questionnaire dated June 18, 2004 that she was able to cook three meals a day, clean, do laundry, feed animals, grocery shop, mow the lawn on a riding lawn mower, watch television, bowl and walk (AR 115-117). She indicated that she was limited in performing some of these activities due to difficulties breathing and due to arm/hand pain (AR 115-117). Deloe claimed she was able to take care of her personal needs, had no problems getting along with family, friends and neighbors, had no difficulty when out in public, was able to plan each day, make decisions and take medications on her own (AR 119-120). She stated that she sometimes had trouble understanding instructions and carrying them out, but was able to report to work on time, maintain good attendance, keep up with her work, concentrate on her work, get along with coworkers and supervisors and accept changes in the workplace (AR 120-121). Deloe reported she belonged to no clubs or groups but attended cook outs and birthday parties a few times per year (AR 119).

In a Daily Activities Questionnaire dated July 31, 2006, Deloe reported the same activities (AR 136). She reported that she watched television for a couple of hours per day, but she was unable to sit still for long periods and could not "get interested" (AR 137). She mainly read newspaper headlines and did not read books because she did not "read good" and quickly lost interest in them (AR 137). She also reported that she would forget to pay her bills on time (AR 137). Deloe reported she drove approximately 20 miles four to five times per month, was able to use public transportation and attended cook outs, birthday parties and holiday celebrations "once in awhile" (AR 138).

On July 13, 2006 and August 23, 2006, Deloe was evaluated by Robert P. Craig, Ph.D. Dr. Craig reported that she had a driver's license and drove to the examination, was attentive, was able to concentrate well, was reasonably motivated and self-sufficient (AR 267). She reported frequent anger outbursts at her husband and daughter, as well as irritability (AR 267). She further reported that she worried about her husband who was on disability (AR 267). On mental status examination, Dr. Craig reported she was cooperative and attentive, her behavior and psychomotor activities were within normal limits and her demeanor was appropriate (AR

2

268). She was well oriented to time, place and person (AR 269). She had no suicidal or homicidal ideations, no hallucinations, illusions or delusions and no feelings of depersonalization or ideas of reference or influence (AR 268). Deloe reported that she left school after the 7th grade and did not obtain a GED (AR 268).

Dr. Craig reported that she understood basic "similarities" such as "socks and shoes," "chair and table," and "elbow and a knee," but did not understand how a "painting and a statute" or and "egg and a seed" were similar (AR 268). She did not understand the meaning of the phrase "strike while the iron is hot," but understood the meaning of "don't count your chickens before they've hatched" (AR 268). Deloe was able to spell "world" backwards and perform simple multiplication and division well with no difficulties, but was unable to perform serial sevens (AR 268-269). Dr. Craig found she had reasonably good judgment, could perform daily living tasks and could adequately handle money (AR 269). Her social functioning was somewhat restricted, but Dr. Craig noted this was "probably more of her own choosing" (AR 269). Her concentration was fair and her persistence and pace depended upon the time of day and whether she was in pain due to her physical impairments (AR 269).

Dr. Craig administered the Wechsler Adult Intelligence Scale Third Edition (WAIS-III) (AR 269). Deloe achieved a Verbal IQ of 70, a Performance IQ of 65, and a Full Scale IQ of 65, which Dr. Craig found would place her intellectual functioning within the mild range of mental retardation (AR 269). He noted that Deloe appeared to work to the best of her ability and that the results were believed to be a valid measure of her present level of functioning (AR 270).

Dr. Craig also administered the Minnesota Multiphasic Personality Inventory-II (MMPI-II) (AR 270). Dr. Craig stated that her score indicated that she "endorsed a number of psychological problems, suggesting that she was experiencing a high degree of stress" (AR 270). Her elevated scales were hysteria, depression and schizophrenia, and Dr. Craig indicated that individuals with these elevations tended to feel depressed and ineffective (AR 270). He found that interpersonally, Deloe was an introverted person who had difficulty meeting and interacting with other people (AR 270). Her "Marital Distress Scale" indicated that her marital situation was "quite problematic" (AR 270). Dr. Craig noted that under the "Diagnostic Considerations" section, her symptoms pointed to the possibility of a schizophrenia disorder (AR 270).

3

Dr. Craig found that Deloe functioned within the mild range of mental retardation (AR 270). He further found that she had significant physical health problems (AR 270). In assessing her personality, he indicated that she presented as having symptoms of significant mental health problems, as well as significant symptoms of depression (AR 270). He stated that she might appear as tense, anxious, agitated or hostile at times, and there were indications of cognitive disorganization, possibly representing schizophrenia (AR 270). Dr. Craig diagnosed Deloe with depressive disorder NOS, psychotic disorder NOS-Provisional and mild range of mental retardation (AR 270). He assigned her a Global Assessment of Functioning ("GAF") score of 45-50 (AR 271).[1]

Deloe and Joseph Kuhar, a vocational expert, testified at the hearing held by the ALJ on November 7, 2006 (AR 311-338). Deloe testified that she completed the 7th or 8th grade and did not obtain a GED (AR 314). She further testified that she quit school because she did not like it or understand it and had a job babysitting (AR 316). She stated she had difficulty reading but was able to perform basic math (AR 315). She was able to drive a car short distances to run errands but her husband was usually with her (AR 330-331).

Deloe testified that she was laid off from her last job as a part-time telephone salesperson through a temporary service and was fired from a packer position after one month because she was unable to keep up and missed a couple of days (AR 317; 319). She reported that she had mostly performed factory type jobs, but claimed that she could no longer do so due to pain in her arms and hands (AR 318-321). Although she did not socialize with her coworkers, she had no difficulty getting along with them or her supervisors (AR 322).

Deloe further testified that she suffered from mood swings and became easily aggravated (AR 326). She took Valium and Paxil for her mental impairment (AR 327). She testified that she previously hunted and went for walks, but no longer engaged in these activities because of

---

[1]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. It represents "the clinician's judgment of the individual's overall level of functioning." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 32 (4th ed. 2000). Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. at 34.

4

her physical impairments (AR 331).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as Deloe, who was able to perform light exertional work with a sit/stand option, with no repetitive tasks, no public contact and no reading or writing (AR 334). The vocational expert testified that such an individual could perform the light work positions of a mold cleaner and gate guard (AR 335). The vocational expert also testified that a GAF score of 45 to 50 indicated that such an individual was having serious problems with both social and occupational functioning to the extent that such an individual would not be expected to obtain or sustain competitive employment, and would not be able to deal effectively with supervisors and/or coworkers, thereby negating the existence of jobs even at the sedentary level (AR 334).

Following the hearing, the ALJ issued a written decision which found that Deloe was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 13-20). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 6-9). She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A

5

person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Deloe met the disability insured status requirements of the Act through December 31, 2006 (AR 13). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that "[t]he claimant has the following severe impairments: chronic obstructive pulmonary disease; gastroesophageal reflux disease (GERD); [and] mental difficulty (20 CFR 404.1520(c) and 416.920(c))", but determined at step three that she did not meet a listing (AR 15-17). The ALJ found that she was able to perform work at the light exertional level with a sit/stand option, but was limited to work involving no repetitive tasks, public contact or having to read or write (AR 17). At the final step, the ALJ concluded that Deloe could perform the jobs cited by the vocational expert at the administrative hearing (AR 19). The ALJ additionally determined that her statements concerning the intensity,

6

persistence and limiting effects of her symptoms were not entirely credible (AR 17). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Here, Deloe challenges the ALJ's finding at step three of the sequential evaluation process. Step three requires a determination of whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1. *See* 20 C.F.R. § 404.1520(d). A claimant who meets or medically equals all of the criteria of an impairment listed in Appendix 1 is *per se* disabled and no further analysis is necessary. *Burnett v. Commissioner*, 220 F.3d 112, 119 (3rd Cir. 2000). A claimant bears the burden of proving that her impairments meet or equal a listed impairment. *See Adorno v. Shalala,* 40 F.3d 43, 46 (3rd Cir. 1994).

Deloe's sole contention is that the ALJ erroneously found she did not meet the listing for mental retardation as set forth at 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1, which provides:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> • • •
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of functioning[.]
>
> • • •

20 C.F.R. Subpt. P, App. 1, § 12.05C. In order to meet the requirements of § 12.05C, a claimant must: (1) have a valid verbal, performance or full scale IQ of 60 through 70; (2) have a physical or other mental impairment imposing additional and significant work-related limitations of function; and (3) show that she experiences "deficits in adaptive functioning" with an onset prior to age 22. *Markle v. Barnhart*, 324 F.3d 182, 187 (3rd Cir. 2003); *Gist v. Barnhart*, 67

Fed.Appx. 78, 81 (3rd Cir. 2003).

Here, the ALJ cryptically rejected Deloe's contention that she satisfied the requirements to meet the Listing of 12.05C as follows:

> Nor does the claimant's mild mental retardation difficulty does not meet Listing 12.05 (sic). As set out in greater detail below, the claimant engages in extensive activities of daily living, is take (sic) care of her household, and is able to get along with others (AR 17).

The ALJ then proceeded to summarize Deloe's daily activities in connection with his assessment of her residual functional capacity (AR 17-18).

Deloe contends that substantial evidence did not support the ALJ's conclusion that she failed to meet the Listing for mental retardation under 12.05C. Alternatively, Deloe contends that the ALJ failed to adequately explain the basis for his conclusion that she did not meet the Listing and, as a consequence, a remand is appropriate. For the reasons that follow, we find Deloe's later position well taken.

In reviewing the ALJ's decision, we are unable to discern the basis for his conclusion that Deloe failed to meet Listing 12.05C. Fairly read, the basis of the ALJ's conclusion could have been that he implicitly rejected Deloe's IQ scores, since they are not binding on the ALJ. The regulations provide that since intelligence tests are only part of the overall assessment, the Commissioner should consider the comments contained in the report as to whether the IQ scores are "considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00D(6)(a). "[T]he Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record." *Markle*, 324 F.3d at 187. The ALJ expressed no opinion on the validity of Deloe's IQ scores.

We are also left to speculate as to whether the ALJ found she failed to demonstrate deficits in adaptive functioning with an onset prior to age 22. The Commissioner points out that "the record does not document mild mental retardation throughout Plaintiff's developmental period." *Defendant's Brief* p. 11. The Commissioner notes that unlike the claimant in *Markle*,

8

Deloe did not attend special education classes in school, was able to perform simple multiplication and division without difficulty and had past relevant work experience as a telephone solicitor, assembler and laundry worker. *Id*. None of these findings however, were made by the ALJ. In this regard we note that Deloe had a 7th or 8th grade education; claimed that she quite school to babysit because of comprehension problems; and was unable to obtain her GED (AR 314-316). We express no opinion as to how these issues should be resolved, and merely observe that the ALJ failed to address them.

We also note, by way of focusing the inquiry on remand, that the second prong of the test, (i.e., whether Deloe had an additional physical or other mental impairment imposing additional and significant work-related limitations of functioning), has already been established by virtue of the ALJ's previously described finding relative to her severe impairment (AR 15). Indeed, as stated in *Markle:*

> Several courts of appeals have held that a finding of a severe impairment establishes the second prong of § 12.05C, e.g., *Luckey v. U.S. Dept. of HHS*, 890 F.2d 666, 669 (4th Cir. 1989); *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). In *Williams v. Sullivan*, 970 F.2d 1178, 1186-89 (3rd Cir. 1992), we alluded to the requirement of "a physical or other mental impairment imposing additional and significant work-related limitation of functions", but it was unnecessary to frame a definition because we had decided that the claimant's evidence was insufficient to show that he was mentally retarded prior to age 22. However, more recently, the Commissioner in new regulations on the evaluation of mental disorders addressed the second prong of § 12.05C, stating that "[w]e always have intended the phrase to mean that the other impairment is a "severe" impairment as defined in §§ 404.1520(c) and 416.920(c)." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50746, 50772 (August 21, 2000). Even absent the Commissioner's clarifying regulation, the severity of Markle's other impairments (obstructive pulmonary disease, hypertension, obesity and gout) which limit him to some forms of light work constitute impairments "imposing additional and significant work-related limitations of function."

*Markle*, 324 F.3d at 188.

In conclusion, the ALJ must indicate in his decision which evidence he has rejected and which evidence he is relying on as the basis for his findings. *Walton v. Halter*, 243 F.3d 703, 710

9

(3rd Cir. 2001). Because the ALJ is required to give some reason for discounting the evidence he rejects, *see Adorno v. Shalala,* 40 F.3d 43, 48 (3rd Cir. 1994), and the ALJ's decision here fails to make specific findings as to how the evidence on the record fails to meet the criteria of Listing 12.05C, we are unable to conclude that his decision is supported by substantial evidence. Consequently, the case shall be remanded to the Commissioner for further consideration consistent with this Opinion.

## VI. Conclusion

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRENDA LEE DELOE,               )
                                )
        Plaintiff,             )
                                )   Civil Action No. 07-157 Erie
                                )
        v.                     )
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
        Defendant.             )

## ORDER

AND NOW, this 11th day of February, 2008, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 11] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 17] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

                                    s/ Sean J. McLaughlin
                                    United States District Judge

cm: All parties of record.